**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| MELISSA MARSHALL, | : | |
| Plaintiff, | : | |
| | | Case No. 3:14cv00144 |
| vs. | : | |
| | | District Judge Thomas M. Rose |
| CAROLYN COLVIN, | : | Chief Magistrate Judge Sharon L. Ovington |
| Acting Commissioner of the | | |
| Social Security Administration, | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATIONS[1]**

**I.     Introduction**

Plaintiff Melissa Marshall brings this case challenging the Social Security Administration's denial of her applications for Supplemental Security Income and Disability Insurance Benefits.  She applied for benefits in August 2011, asserting that she was under a benefits-qualifying disability starting on December 15, 2009 due to in part to significant back and hand pain.  The Social Security Administration denied her applications after a hearing before Administrative Law Judge (ALJ) Mary Ann Poulose.

Plaintiff brings this case challenging ALJ Poulose's written non-disability decision.  The case is before the Court upon Plaintiff's Statement of Errors (Doc. #10), the

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

Commissioner's Memorandum in Opposition (Doc. #14), Plaintiff's Reply (Doc. #16), the administrative record (Doc. #7), and the record as a whole.

Plaintiff seeks an Order remanding the case to the Social Security Administration for payment of benefits. The Commissioner seeks an affirmance of the ALJ's non-disability decision.

## II.  Background

### A.  Plaintiff's Vocational Profile and Testimony

Plaintiff was 41 years old on her alleged disability onset date. Her age placed her in the Social Security Administration's category of "younger" person. She earned her high school GED and has "some college." (Doc. #7, *PageID#* 71). She worked as a waitress, an order clerk, and a hand packager.

During the administrative hearing before ALJ Poulose, Plaintiff testified that her pain is severe. She typically spends 10 to 12 hours per day lying down. If she does not lie down this much, her pain becomes severe after ½ hour of standing. *Id*. at 90. On a good day, she can vacuum for about 10 minutes.

Plaintiff's hands hurt to the extent she cannot write. Her hands also hurt when she does larger tasks like laundry or dish washing, so she needs assistance with such tasks. She needs to rest her hands every 10 minutes regardless of what she is doing, big or small. Her hand pain worsens during the course of a day and the more she uses her hands.

Plaintiff also experiences panic attacks that last 20-60 minutes. During a panic

attack, she becomes short of breath and cries. She struggles with depression due to unresolved grief about her father's death.

Plaintiff testified that she lost her health insurance in 2011 and could no longer obtain medications or seek treatment. She did, however, see Nurse Sroga once a month for about 2 years. She indicated that Nurse Sroga would see her for 30 minutes each visit, discuss her problems, and examine her.

  B. **Medical Records And Opinions**

A detailed description of the evidence is unnecessary because the undersigned has reviewed the entire administrative record and because both the ALJ and Plaintiff's counsel have discussed the relevant records concerning Plaintiff's physical and mental impairments with citations to specific evidence. The Commissioner also defers to the factual recitations in the ALJ's decision.

**III.** **"Disability" Defined and ALJ Poulose's Decision**

To be eligible for Disability Insurance Benefits or Supplemental Security Income a claimant must be under a "disability" as the term is defined by the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both benefit programs. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful

activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70.

As noted previously, it fell to ALJ Poulose to evaluate the evidence connected to Plaintiff's benefit applications. She did so by considering each of the 5 sequential steps set forth in the Social Security regulations. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[2] The ALJ's more pertinent findings begin at step 2 of her sequential evaluation.

At step 2, ALJ Poulose found that Plaintiff has the severe impairments of carpal tunnel syndrome, lumbar degenerative disc disease, and obesity. (Doc. #7, *PageID#* 48). At step 3, the ALJ concluded that Plaintiff does not an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments.[3]

At step 4, ALJ Poulose assessed Plaintiff's residual functional capacity or the most she could do despite her impairments. *See* 20 C.F.R. §404.1545(a); *see also Howard v. Commissioner of Social Sec.*, 276 F.3d 235, 239 (6th Cir. 2002). ALJ Poulose concluded that Plaintiff could perform light work[4] except she "is limited to work activity with occasional stooping and climbing, as well as occasional handling and fingering." (Doc. #7,

---

[2] The remaining citations to the regulations will identify the pertinent Disability Insurance Benefits regulations with full knowledge of the corresponding Supplemental Security Income regulation.

[3] The Listings are found at 20 C.F.R. Part 404, Subpart P, Appendix 1.

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds...." 20 C.F.R. §404.1567(b).

4

*PageID#* 51).

The ALJ turned at step 5 to the vocational expert's testimony and found that Plaintiff could perform a significant number of jobs that exist in the State of Ohio's economy.

The sum and substance of the ALJ's sequential evaluation led to her ultimate conclusion, as noted previously, that Plaintiff was not under a benefits-qualifying disability.

## IV. Judicial Review

The Social Security Administration's denial of Plaintiff's applications for benefits – here, embodied in ALJ Poulose's decision – is subject to judicial review along two lines: whether the ALJ applied the correct legal standards and whether substantial evidence supports the ALJ's findings.  *Blakley v. Comm'r of Social Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see Bowen v. Comm'r of Social Sec*., 478 F3d 742, 745-46 (6th Cir. 2007). Reviewing the ALJ's legal criteria for correctness may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings.  *Rabbers v. Comm'r of Social Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F3d at 746.

The substantial-evidence review does not ask whether the Court agrees or disagrees with the ALJ's factual findings or whether the administrative record contains evidence contrary to those factual findings.  *Rogers v. Comm'r of Social Sec*., 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r of Social. Sec*., 203 F.3d 388, 389-90 (6th Cir. 1999).  Instead, substantial evidence supports the ALJ's factual findings when "a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'"

5

*Blakley*, 581 F.3d at 406 (quoting *Warner v. Comm'r of Social Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers*, 486 F.3d at 241.

V.   **Discussion**

    A.   **The Vocational Expert's Testimony**

Plaintiff contends that the ALJ's reliance on a vocational expert's testimony was misplaced because the expert "did not genuinely testify that other work would be available to Plaintiff despite her manipulative limitations." (Doc. #10, *PageID#* 695). Plaintiff reasons that the vocational expert responded to the ALJ's initial hypothetical by erroneously assuming that Plaintiff could use her hands frequently rather than occasionally. "This erroneous assumption was the result of her interpreting 'occasional handling and fingering' with 'occasional handling and occasional fingering.'" *Id*.

"In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010). "The vocational expert's testimony is directed solely to whether, given a claimant's age, experience, and education, along with the ALJ's assessment of what she 'can and cannot do,' there exist a significant number of employment opportunities for her in the regional and national economies." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004).

The ALJ posed the following initial hypothetical to the vocational expert:

> Given her age, her education, her work experience and skill set, and if she were limited to light work and only occasional stooping and climbing, and I'm going to start with frequent, but not constant, fingering and handling with the bilateral upper extremities, would that allow for any of her work as per the DOT or as she performed it?

(Doc. #7, *PageID#* 95). The vocational expert testified that the job of packager would be eliminated but the waitress or order clerk jobs would not. *Id.* at 96. The ALJ then altered the hypothetical by asking: "And if it was down to occasional handling and fingering?" *Id.* The vocational expert opined that this would eliminate the waitress and order clerk jobs. With all these jobs eliminated, the ALJ turned to step 5 of the sequential evaluation and asked the ALJ:

> Okay. So what are the other types of jobs that she could so [sic] with light [sic], occasional stooping and climbing, and occasional handling and fingering, bilaterally.

*Id*. This, according the vocation expert, would "significantly erode" the number of jobs available. *Id*. But, according to the vocational expert, a significant number of light-work jobs would be available in the national and State of Ohio economies.

Plaintiff's counsel posed the "hypothetical in a different way ...." *Id*. at 98. Counsel asked the expert to assume that the hypothetical worker could only use her "hands occasionally during the workday...," *id*., with occasionally meaning 1/3 of the workday. This logically meant that the worker could not use her hands 2/3 of the day. *Id*. at 99. The vocational expert testified, "I think it would be very difficult to find work that fits that particular criteria." *Id*.

7

The Commissioner contends that Plaintiff's counsel asked the vocational expert an alternative, rather than a clarifying, hypothetical. If this is correct, the Commissioner reasons, then the vocational expert's answer to the ALJ's initial hypothetical was not altered by the expert's answer to counsel's different, alternative hypothetical. The Commissioner is correct.

The questions posed by Plaintiff's counsel, and the vocational expert's answers, did not clarify her prior testimony about the significant number of jobs available to a worker with Plaintiff's residual functional capacity. Instead, Plaintiff's counsel presented an alternative hypothetical based on different underpinnings. Those underpinnings asked the vocational expert to assume a worker who could occasionally perform reaching, handling, and fingering together as "hand limitations." (Doc. #7, *PageID#* 99). The vocational expert essentially testified that these "hand limitations" were more limiting than the conditions posed by the ALJ's initial hypothetical – specifically, the ALJ's questions about occasional "handling and fingering." The vocational expert testified that this difference accounted for her different answers to the ALJ's initial hypothetical versus counsel's hypothetical. Indeed, nothing in counsel's questioning or the vocational expert's resulting answers indicated that the expert was clarifying her response to the ALJ's initial hypothetical. *See id*. at 97-101. Consequently, as long as substantial evidence supported the work abilities and limitations – *i.e*., the residual functional capacity – set by the ALJ's initial hypothetical, the ALJ reasonably relied on the vocational expert's answer to the initial hypothetical. *See Smith v.*

*Halter*, 307 F.3d 377, 378 (6th Cir. 2001). As will be seen next, *infra*, §(V)(B), Plaintiff's challenges to the ALJ's assessment of her residual functional capacity lack merit. Consequently, substantial evidence – the vocational expert's testimony – supported the ALJ's conclusion that a significant number of jobs remain available to Plaintiff in the national economy.

Accordingly, Plaintiff's challenge to the ALJ's reliance on the vocational expert's testimony lacks merit.

    **B.**    **Residual Functional Capacity**

Plaintiff argues that the ALJ erred by failing to include any standing or sitting limitations in the assessment of her residual functional capacity. Plaintiff advances three particular arguments:

1. The ALJ should have included the 6-hour sit/stand option presented by consulting physicians Dr. Hughes and Dr. Perencevich. (Doc. #7, *PageID#*s 121-40). Or, given Plaintiff's reasoning, the ALJ erred by crediting part of these physicians' opinions but failing to explain why she omitted their opinions about Plaintiff's 6-hour sit/stand option.

2. Treating certified nurse practitioner Mary Sroga's consistent opinions that Plaintiff is restricted in her ability to sit or stand combined with the opinions of Drs. Hughs and Perencevich "well illustrates the un-supportability of the ALJ's failure to include any standing or sitting limitations in the residual functional capacity assigned." (Doc. #10, *PageID#* 697).

3. The ALJ's erroneous omission of a sit/stand option undermines her non-disability conclusion due to the vocational expert's testimony that a sit/stand option, when adopted into the ALJ's hypothetical, would eliminate the available jobs identified by the expert.

The Commissioner focuses on Soc. Sec. Ruling 83-10, 1983 WL 31251 at *5 (1983),

9

which states: "by definition, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." (Doc. #14, *PageID#* 715). This definition leads the Commissioner to conclude that the ALJ "properly included limitations to standing/walking/sitting," *id*., in her assessment of Plaintiff's residual functional capacity.

The Commissioner is correct up to a point. First, correctness: Ruling 83-10's definition of light work includes a standing or walking limitation of 6 out of 8 hours each workday. Light work also permits a worker to sit "intermittently during the remaining time" – *i.e.*, the time a worker is neither standing nor walking. In other words, light work allows sitting intermittently for a total about 2 hours a workday. Soc. Sec. Ruling 83-10, 1983 WL 31251 at *5. Consequently, the ALJ's finding that Plaintiff could perform light work essentially recognized that during a workday, she was limited to standing or walking 6 out of 8 hours and sitting intermittently about 2 hours.

At first glance, this seems to favor the Commissioner because the ALJ's finding that Plaintiff could perform light work contains what Plaintiff argues it lacks – a standing or sitting limitation. But a problem arises for the Commissioner in the vocational expert's testimony. The ALJ asked the vocational expert to consider a hypothetical person who could perform light work (with certain other limitations, not presently pertinent). The vocational expert testified that such a light-work-able person could perform work as an conveyor line baker, a counter clerk, or an usher, and that a significant number of these jobs

were available in Ohio. Okay so far for the Commissioner. Yet, with the Commissioner's point accepted – i.e., light work involves standing/walking/sitting limitations – the vocational expert essentially testified that the available jobs she identified involve standing/sitting/walking limitations.

Hence the problem: On the one hand the vocational expert opined that a person able to perform light work[5] could work as a conveyor-line baker, a counter-clerk, an usher. *Id*. at 96-97. On the other hand, the vocational expert testified that a person able to perform light work with a sit/stand option could not perform these same jobs. Specifically, the vocational expert testified:

> I don't believe that a sit/stand option would be possible for the jobs that I cited. The conveyor line baker worker position would probably require a person to work in a facility where a stool or bench would be considered a special accommodation. I don't think that would be possible. The usher position, most definitely a person would be expected to be on their feet at least to close of the workday, and therefore, I can't see how a stool or sitting down for that matter could reasonably work into the workday. And I'd say the same about the counter clerk position based on the work environment, a person would really need to be on their feet in order to work at the machines and perform the job duties.

*Id*. at 100-01. Which is it? Either a person who can perform light work, which includes by definition sit/stand limitations, can do these jobs or not. A logical explanation for the vocational expert's differing testimony is that she did not understand that light work included by definition a sit/stand limitation.

---

[5] As further limited by the ALJ to "occasional stooping and climbing, and occasional handling and fingering, bilaterally ...." (Doc. #7, *PageID#* 96).

11

Regardless, neither the ALJ nor Plaintiff's counsel asked the vocational expert to clarify her differing answers to whether a person who could perform light work could perform work as an usher, a conveyor-line baker, or counter clerk.

Accordingly, the ALJ unreasonably relied on one opinion by the vocational expert when the expert also expressed the opposite opinion in response to what in substance was the same hypothetical.[6]

## VI. Remand is Warranted

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F3d at 746. Remand is warranted for an ALJ's failure to follow the regulations, for example, when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545-47 (6th Cir. 2004); failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff to lack credibility, *Rogers*, 486 F.3d at 249.

Under sentence 4 of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing."

---

[6] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of the parties' remaining contentions is unwarranted.

*Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence 4 may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky*, 35 F.3d at 1041. The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is weak. *Faucher v. Sec'y of Health & Humans Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A remand for an award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and because the evidence of a disability is not strong while contrary evidence is weak. *See Faucher*, 17 F.3d at 176. Yet, Plaintiff is entitled to an Order remanding this matter to the Social Security Administration pursuant to sentence 4 of §405(g) due to problems set forth above. On remand the ALJ should be directed to review Plaintiff's disability claim to determine anew whether she was under a benefits-qualifying disability, including, at a minimum, a re-assessment Plaintiff's residual functional capacity, and a re-consideration of the evidence at step 5 of the sequential evaluation.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Melissa Marshall was under a "disability" within the meaning of the Social Security Act;

3. This case be remanded to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. §405(g) for further consideration consistent with this Report and a Decision and Entry adopting this Report; and

    4.    The case be terminated on the docket of this Court.

June 4, 2015

                                                        s/Sharon L. Ovington
                                                        Sharon L. Ovington
                                        Chief United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).